**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re | : Chapter 7 |
|     James A. Melasecca, Jr., | : |
|            Debtor. | : Bankruptcy No. 18-17864-MDC |
| | : |
| John Sosalski, Rachel Sosalski, and Northeast Builders LLC, | : |
| | : |
|            Plaintiffs, | : Adversary No. 19-00049-MDC |
|    v. | : |
| James A. Melasecca, Jr., | : |
|            Defendant. | : |

# **MEMORANDUM**

## **I.     INTRODUCTION**

On March 11, 2019, John Sosalski and Rachel Sosalski (the "Sosalskis") and Northeast Builders LLC ("Northeast Builders," and together with the Sosalskis, the "Plaintiffs") filed the *Complaint Objecting to Dischargeability of Debt* (the "Complaint")[1] against James A. Melasecca, Jr. (the "Debtor Defendant"), seeking (i) a determination that the alleged debts owed by the Debtor Defendant to the Plaintiffs are nondischargeable pursuant to §§523(a)(2)(A), 523(a)(4), and 523(a)(6) of title 11 of the United States Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code"), (ii) a determination that the Debtor Defendant should be denied a general discharge pursuant to §§727(a)(3) and 727(a)(4) of the Bankruptcy Code, and (iii) a determination that certain assets listed in the Debtor Defendant's schedules are excluded from the Debtor Defendant's bankruptcy estate.  The Debtor Defendant has moved to dismiss the

---
[1] Adv. Pro. Docket No. 1.

Complaint (the "Motion to Dismiss")[2] for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  The Plaintiffs filed opposition to the Motion to Dismiss (the "Response").[3]  The Court has considered the Complaint and the arguments in the Motion to Dismiss and the Response, and for the reasons set forth below will grant the Motion to Dismiss because the Complaint fails to meet the Plaintiffs' pleading obligations under the Federal Rules of Civil Procedure, made applicable here by the Federal Rules of Bankruptcy Procedure.

## II.     FACTUAL BACKGROUND[4]

The Debtor Defendant is the principal and/or authorized agent for Alpha United LP and Alpha United Trust.  Complaint at ¶4.  Plaintiff John Sosalski worked in the construction trade, and in or around May 2010 formed a limited liability company known as Northeast Builders LLC, which serves as a licensed contractor in Philadelphia.  Complaint at ¶14.

Plaintiff John Sosalski and the Debtor Defendant agreed to a 50/50 joint venture in the form of an entity called Alpha United Holdings LLC ("Holdings").  Complaint at ¶32.  Plaintiffs allege that the Debtor Defendant induced the Plaintiffs to loan funds to the Debtor Defendant and/or his entities, represented to be secured against specific properties, but did not collateralize the loans as promised and instead converted and comingled the borrowed funds.  Complaint at ¶¶20, 21.  Plaintiffs further allege that Plaintiff John Sosalski borrowed $238,875.00 (the "SGL Funding") from Spring Garden Lending ("SGL"), which in turn was loaned to the Debtor Defendant and/or his entities as a bridge loan (the "North 15th Street Loan") for collateral relating to property located at 924-926 North 15th Street, Philadelphia, Pennsylvania (the "North 15th Street Property").  Complaint at ¶22.

---

[2] Adv. Pro. Docket No. 4.

[3] Adv. Pro. Docket No. 8.  The supporting *Memorandum of Law in Opposition to Defendant's Motion to Dismiss Under Rule 12(b)(6)* was filed on April 30, 2019.  Adv. Docket No. 6.

[4] All factual allegations recited herein are taken from the allegations in the Complaint.  As noted *infra*, however, the Court only accepts well-pleaded allegations, and disregards legal conclusions and conclusory statements, with which the Complaint is rife.

In connection with obtaining the SGL Funding, Plaintiff John Sosalski granted SGL a lien on five previously unencumbered properties he owned personally. Complaint at ¶24. In exchange for the North 15th Street Loan, Plaintiffs John Sosalski and Northeast Builders were to be granted second-position liens, junior to SGL, on the North 15th Street Property. Complaint at ¶22. The profit derived from the North 15th Street Property was to be used first to repay Plaintiff John Sosalski and Northeast Builders for the North 15th Street Loan. Complaint at ¶23.

Plaintiffs also loaned $150,000.00 to Debtor Defendant and/or his entities (the "North 5th Street Loan") in connection with land located at 819 North 5th Street, Philadelphia, Pennsylvania (the "North 5th Street Property"), funded by the sale of Plaintiff John Sosalski's condominium in Wildwood, New Jersey. Complaint at ¶26. In exchange for the North 5th Street Loan, Plaintiffs were to be granted second-position liens, junior to SGL, on the North 5th Street Property. Complaint at ¶26. The Debtor Defendant and Alpha United LP were to be guarantors and/or personally liable to Plaintiffs for the North 15th Street Loan and the North 5th Street Loan. Complaint at ¶27.

Plaintiffs further allege that the Debtor Defendant fooled Plaintiff John Sosalski into borrowing $38,700.00 from his CAMA retirement fund to be returned with 5% interest, but that amount has not been repaid. Complaint at ¶29. In or around 2017, Plaintiff John Sosalski also took out a personal home equity line of credit in the amount of $357,000.00 and Northeast Builders took out a business line of credit in the amount of $40,500.00. Complaint at ¶31. The proceeds of these lines of credit (together, the "Holdings Loans") were to be loaned to Holdings to be used for the acquisition of properties. Complaint at ¶¶31-32.

Plaintiffs allege that all net profits from ongoing and future projects undertaken by the Plaintiffs and the Debtor Defendant were to be divided equally. Complaint at ¶27. At the time

3

of Holdings' formation, Plaintiff John Sosalski and the Debtor Defendant were advised by the Debtor Defendant's personal counsel, without disclosure of counsel's conflict of interest. Complaint at ¶38. Counsel drafted Holdings' operating agreement, vesting sole managerial control of the entity in the Debtor Defendant. Complaint at ¶66. Counsel also created four additional limited liability companies to be owned by Holdings: AU1 LLC, AU2 LLC, AU3 LLC, and AU4 LLC (collectively, the "Holdings Subsidiaries"). Complaint at ¶34.

Holdings acquired six properties to renovate, all in Delaware County, Pennsylvania, with the Holdings Loans: (i) 612 Tribet Street, (ii) 3902 Gideon Street, (iii) 433 Ellis Street, (iv) 2840 N. Lee Street, (v) 505 S. 2nd Street, and (vi) 436 Fern Street (the "Holdings Loans Properties").[5] Complaint at ¶¶35-36. Plaintiffs allege that the Debtor Defendant agreed to provide an additional seven properties to Holdings that were owned by Alpha United LP, but the Debtor Defendant only contributed one property. Complaint at ¶37. Plaintiffs allege that the Debtor Defendant thereafter used and distributed Holdings' funds for his personal gain, including directly collecting rent from Holdings' properties without a distribution to Plaintiff John Sosalski. Complaint at ¶39.

## III.     THE COMPLAINT

The Complaint sets forth five counts against the Debtor Defendant. Count I asserts that the Debtor Defendant's alleged debt to the Plaintiffs is nondischargeable pursuant to §523(a)(2)(A) of the Bankruptcy Code because it was incurred by false pretenses and fraud (the "§523(a)(2)(A) Count"). Complaint at ¶¶40-44. Count II asserts that the Debtor Defendant's alleged debt to the Plaintiffs is nondischargeable pursuant to §523(a)(4) of the Bankruptcy Code because the Debtor Defendant incurred it through larceny (the "§523(a)(4) Count"). Complaint

---

[5] Although the Complaint notes that each of the Holdings Properties is in Delaware County, Pennsylvania, it does not provide the town or city in which each is located.

at ¶¶45-50.  Count III asserts that the Debtor Defendant's alleged debt to the Plaintiffs is nondischargeable pursuant to §523(a)(6) because it was incurred through willful and malicious injury to the Plaintiffs (the "§523(a)(6) Count").  Complaint at ¶¶51-55.  Count IV asserts that the Debtor Defendant is not entitled to a general discharge of his debts because he concealed assets during his testimony at the meeting of creditors held pursuant to §341 of the Bankruptcy Code (the "§727 Count").  Complaint at ¶¶56-61.  Count V asserts that the Holdings Loans Properties held by the Holdings Subsidiaries should be excluded from the Debtor Defendant's bankruptcy estate because they were purchased exclusively with the Plaintiffs' funds, while the Debtor Defendant breached his agreement to likewise contribute seven properties to Holdings (the "Estate Property Count").  Complaint at ¶¶62-69.

## IV.    DISCUSSION

### A.    Legal Standard Applicable to the Motion to Dismiss

Federal Rule of Civil Procedure 8(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7008, requires that the Complaint contain a "short and plain statement of the claims showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b), this Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn from them after construing them in a light most favorable to the Plaintiffs.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) (*citing Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *D.P. Enters., Inc. v. Bucks County Comm. College*, 725 F.2d 943, 944 (3d Cir. 1984)). Importantly, however, the Court only accepts all well-pleaded allegations, and disregards "legal

5

conclusions and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Hammon v. Kennett Twp.*, 746 Fed. Appx. 146, 148 (3d Cir. 2018) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The inquiry is not whether Plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. *Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*, 311 F.3d 198, 215 (3d Cir. 2002).

In determining the sufficiency of the Complaint, the Court considers only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents to the extent the Complaint's claims are based upon the documents. *Logan v. Bd. of Educ. of the Sch. Dist. of Pittsburgh*, 742 Fed. Appx. 628 (3d Cir. 2018). The Court does not refer to other parts of the record. *Jordan*, 20 F.3d at 1261. A case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations. *Id.* (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *D.P. Enters.*, 725 F.2d. at 944). The United States Supreme Court has concluded, however, that a complaint's allegations require more than naked assertions devoid of factual enhancement, and instead must meet the test of facial plausibility: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 1949.

B.  **The §523(a)(2)(A) Count**

Section 523(a)(2)(A) of the Bankruptcy Code provides that "A discharge under section 727 … of this title does not discharge an individual debtor from any debt - … for money,

property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition …." 11 U.S.C. §523(a)(2)(A). The Plaintiffs have alleged that the Debtor Defendant obtained funds from the Plaintiffs by false pretenses and fraud.

A plaintiff alleging a debt was incurred by false pretenses must prove that: (1) there was an omission or implied misrepresentation; (2) promoted knowingly and willingly by the debtor; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff; and (4) which wrongfully induced the plaintiff to advance money, property or credit to the debtor. *Id. Monarch Capital Corp. v. Bath (In re Bath)*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010). In order to prevail on a claim of actual fraud under §523(a)(2)(A), the plaintiff must prove that: (1) the debtor obtained money, property or services through a material misrepresentation; (2) the debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the debtor made the representation with intent to deceive; (4) the plaintiff reasonably relied on the representation; and (5) the plaintiff suffered loss, which was proximately caused by the debtor's conduct. *Lewandowski v. Moeller (In re Moeller)*, 2014 Bankr. LEXIS 1236, at *19 (Bankr. D.N.J. Mar. 31, 2014); *see also In re Ritter*, 404 B.R. 811, 822 (Bankr. E.D. Pa. 2009) (listing the same elements needing to be proved in order for a debt to be declared non-dischargeable under §523(a)(2)(A)).

Pleading fraud invokes a heightened pleading standard under Federal Rule of Civil Procedure 9(b), applicable to this adversary proceeding pursuant to Bankruptcy Rule 7008. A party alleging fraud must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Although Rule 9(b) does not require the Plaintiffs to plead every material detail of

the fraud such as the date, location, and time, the Plaintiffs are required to use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Rockefeller*, 311 F.3d at 216 (internal quotation omitted).

The Plaintiffs allege that the Debtor Defendant "fraudulently and wrongfully incurred the debts by failing to collateralize loans as promised, comingling Plaintiffs' funds with Debtors [sic], failing to meet the Debtor's obligations for the entity known as Alpha United Holdings LLC (wherein Debtor has been attempting to steal 6 properties belonging to Plaintiffs), and mortgaging properties owned by Plaintiffs to Theresa and Michael McSpadden without Plaintiffs [sic] knowledge or consent." Complaint at ¶42.

Construing the Complaint in a light most favorable to the Plaintiffs, it does not meet the minimum pleading requirements to state a claim under §523(a)(2)(A). It is deficient of specific allegations regarding an omission, implied misrepresentation, or fraudulent misrepresentation by the Debtor Defendant. The Plaintiffs allege that the Debtor Defendant "represented" and "promised" that their loans would be collateralized and secured but fails to allege particular statements or conduct supporting these general allegations. Complaint at ¶¶20, 21. Likewise, the Complaint makes the general allegation that the funds from the Plaintiffs' loans were "comingled," but does not make any specific detailed allegations supporting this allegation. Complaint at ¶20. The Plaintiffs' allegations that the Debtor Defendant failed to meet his obligation to contribute properties to Holdings does not allege a specific omission, implied misrepresentation, or fraudulent misrepresentation on the part of the Debtor Defendant, as opposed to a breach of contract or some other claim.

Without the specificity required to put the Debtor Defendant on sufficient notice of the precise statements or conduct which the Plaintiffs allege render the debt owed to them nondischargeable, the §523(a)(2)(A) claim does not withstand the Motion to Dismiss.[6]

C. **The §523(a)(4) Count**

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4). Here the Complaint alleges only that the Debtor Defendant engaged in larceny. Larceny, for purposes of §523(a)(4), is the fraudulent and wrongful taking and carrying away of the property of another with the intent to convert such property to the taker's use without the consent of the owner. *Sullivan v. Clayton (In re Clayton)*, 198 B.R. 878, 884 (Bankr. E.D. Pa. 1996) (citing *In re Graham*, 194 B.R. 369, 374 (Bankr. E.D. Pa. 1996). Larceny thus requires that the initial appropriation of the property of another be wrongful. *Id.*

The §523(a)(4) Count alleges that "[b]y obtaining over $800,000.00 in loans from Plaintiffs by means of intentionally misrepresenting that the notes and mortgages would be recorded, or [by] mortgaging properties owned by Plaintiffs without their knowledge or consent, the Debtor committed larceny." Complaint at ¶48. As discussed above, the Complaint does not make any specific allegations regarding the Debtor Defendant's alleged misrepresentations that he would record the notes and mortgages underlying the Plaintiffs' loans. The Complaint instead simply makes the general allegation that the loans were "represented to be collateralized and secured against specific properties" but the Debtor Defendant "never did collateralize said loans as promised." Complaint at ¶¶20, 22. These general allegations do not meet the Plaintiffs' pleading burden. A complaint must demonstrate the plausibility of its claims and pleading facts

---

[6] While paragraph 42 of the Complaint alleges that the Debtor Defendant fraudulently and wrongfully incurred the debts to the Plaintiffs by mortgaging properties owned by Plaintiffs to Theresa and Michael McSpadden without Plaintiffs' knowledge or consent, this is the first time that alleged misconduct appears in the Complaint. Without any further support, it is clear that this allegation fails the pleading requirements of *Iqbal* and Rules 8 and 9.

9

that are merely consistent with the defendant's liability under the statute does not demonstrate plausibility. *Jou v. Adalian (In re Adalian)*, 474 B.R. 150, 161 (Bankr. M.D. Pa. 2012).

The allegations of the Complaint do not adequately plead a claim for larceny, and the §523(a)(4) Claim will be dismissed.[7]

### D. **The §523(a)(6) Count**

Section 523(a)(6) excepts from an individual debtor's general discharge under §727 any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). Courts recognize that the terms "willful" and "malicious" are separate elements that must each be proven. *In re DiGiovanni*, 446 B.R. 709, 716 (Bankr. E.D. Pa. 2011); *In re Jacobs*, 381 B.R. 128, 138 (Bankr. E.D. Pa. 2008) ("The two concepts are said to be distinct requirements."). The "willful" prong of §523(a)(6) requires a plaintiff to prove a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *Adalian*, 474 B.R. at 161. The Third Circuit has explained that an injury is willful and malicious only if the actor purposely inflicted the injury or acted with substantial certainty that injury would result. *Conte v. Gautam (In re Conte)*, 33 F.3d 303, 305 (3d Cir. 1994).

The standard in the Third Circuit for whether a debt is one for malicious injury under §523(a)(6) is whether the injury is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *DiGiovanni*, *446 B.R.* at 716 (*quoting In re Coley*, 433 B.R. 476, 497 (Bankr. E.D. Pa. 2010)); *see also Conte*, 33 F.3d at 308 (*citing In re Braen*, 900 F.2d 621 (3d Cir. 1990)); *In re Gotwald*, 488 B.R. 854, 866 (Bankr. E.D. Pa. Mar. 26, 2013). Malice for purposes of §523(a)(6) also requires some proof that a debtor's conduct was

---

[7] As noted in footnote 6 above, the Plaintiffs' vague allegations regarding the Debtor Defendant's mortgaging of their properties is unsupported by any additional factual allegations detailing the alleged mortgages or properties mortgaged, and therefore does not meet the Plaintiffs' pleading obligations.

10

motivated by some reason other than a debtor's personal financial interests. *TotalFacility, Inc. v. Brown (In re Brown)*, 557 B.R. 363, 374 (Bankr. E.D. Pa. 2016); *Sherwin Williams Co. v. Grasso (In re Grasso)*, 497 B.R. 434, 446 (Bankr. E.D. Pa. 2013) ("To be malicious, the conduct must have been undertaken *without just cause or excuse*.  In other words, even though an actor may know that her breach will harm the counter party to the contract, malice may not be inferred from the breaching party's conduct if her breach was intended to maximize her personal financial interests.") (emphasis in original) (internal citations omitted).  Malice can be implied from the nature of the act.  *Butler v. Butler (In re Butler)*, 2013 Bankr. LEXIS 4296, at *9 (Bankr. N.D. Ga. Sept. 9, 2013); *see also In re Luby*, 438 B.R. 817, 841 (Bankr. E.D. Pa. 2010) (finding that §523(a)(6)'s requirement of malicious injury was satisfied by inference based on the totality of the debtor's conduct).

The §523(a)(6) Count alleges that the Debtor Defendant "knowingly, deliberately, and with intent to deceive, extracted substantial sums of money from [Plaintiffs] over an extended period by intentionally misrepresenting the nature of the funds, his agreement to share corporate ownership of assets with Plaintiff and by mortgaging Plaintiff's property without knowledge or consent."  Complaint at ¶53.  As stated above with respect to the §523(a)(2) Count and the §523(a)(4) Count, the Complaint contains no sufficiently-detailed allegations regarding what misrepresentations the Debtor Defendant is alleged to have made regarding the "nature of the funds" (which the Court takes to mean whether and how the Plaintiffs' loans to the Debtor Defendant would be secured) or the Debtor Defendant's agreement to "share corporate ownership of assets with Plaintiff."  With respect to the "nature of the funds," the Complaint simply states in very broad generalities that the loans were "represented to be collateralized and secured" but the Debtor Defendant "never did collateralize said loans as promised."  Complaint

11

at ¶¶20, 22. With respect to the agreement to "share corporate ownership of assets," the Complaint simply states that Holdings "was to be a 50/50 joint venture between Debtor and John Sosalski" and Debtor "reneged on his Agreement" to "provide an additional 7 properties" to Holdings. Complaint at ¶¶32, 37. Where the Plaintiffs are relying on the Debtor Defendant's alleged misrepresentations to establish that he inflicted deliberate and intentional injury on them without just cause and excuse, the Plaintiffs must plead more than broad generalities regarding the misrepresentations allegedly made.

The Complaint does not allege sufficiently detailed facts to meet the plausibility test for the §523(a)(6) Count, and it therefore will be dismissed.

E.   **The §727 Count**

Section 727(a)(3) provides that a debtor shall not receive a discharge if the debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. §727(a)(3). Section 727(a)(4) provides that a debtor shall not receive a discharge if the debtor "knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. §727(a)(4).

The §727 Count alleges that during the Debtor Defendant's §341 meeting of creditors, he testified under oath that he was not receiving rental income from any of Holdings properties, and that such statement was false because "Plaintiffs are aware that Rich Scully, a creditor identified on Debtor's schedules, was collecting rent directly from the tenants of 3902 Gideon [and] 737 Fern Street – both properties owned by AU2 LLC and AU3 LLC."  Complaint at ¶¶58-60.

First, the Plaintiffs have not stated a claim under §727(a)(3).  Nowhere in the Complaint do the Plaintiffs allege any facts that could be interpreted to support a claim that the Debtor Defendant concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained.  The Complaint is simply devoid of any allegation that falls under the situation addressed by §727(a)(3), and the Plaintiffs' citation in the Complaint to that section is without merit.

That leaves the Plaintiffs' claim that the Debtor Defendant's testimony at the §341 meeting triggers §727(a)(4)'s bar on discharge.  The allegations in the Complaint, however, do not support that claim either.  The Complaint avers that at the §341 meeting, the Debtor Defendant "was asked whether he was collecting rental income from any of the Alpha United Holdings LLC properties," to which he responded that he was not.  Complaint at ¶¶58-59.  The Complaint then alleges that the Debtor Defendant's testimony was untrue because "Rich Scully, a creditor identified on Debtor's schedules, was collecting rent directly from the tenants of 3902 Gideon [and] 737 Fern Street – both properties owned by AU2 LLC and AU3 LLC."  Complaint at ¶60.  On their face, these allegations do not make a plausible claim that the Debtor Defendant is not entitled to a discharge pursuant to §727(a)(4) because he made a false claim during his testimony.  There is no inference that can be reached from these allegations that the Debtor testified falsely.  Rather, according to the Complaint, the Debtor Defendant testified that he was

not receiving rental income from the Holdings Properties, which the Plaintiffs believe was being collected directly by a creditor of the Debtor Defendant. There is no allegation that the creditor subsequently transferred the rent to the Debtor Defendant or any other allegation which would support the allegation that the Debtor's testimony at the §341 meeting was false.

The §727 Count fails to state a plausible claim against the Debtor Defendant and will be dismissed.

F. **The Estate Property Count**

The Estate Property Count alleges that "As the 6 properties Sosalski contributed to Alpha United Holdings LLC were never matched by Debtor, and as Sosalski was never compensated by Debtor for the equity imbalance in Alpha United Holdings LLC, the assets of AU1 LLC, AU2 LLC, AU3 LLC, and AU4 LLC (minus 206 Tribet) should be excluded from the Bankruptcy Estate." Complaint at ¶68. The Plaintiffs therefore request a declaratory judgment "that John Sosalski is the sole owner of AU1 LLC, AU2 LLC, AU3 LLC, and AU4 LLC, that 206 Tribet Street be transferred to the custody of Michael Kaliner, Esq., and that [the] balance of the holdings be excluded from the estate and vested in Plaintiff's ownership." Complaint at ¶69.

The Plaintiffs, by these allegations, acknowledge that the assets subject to the Estate Property Count are assets of the Holdings Subsidiaries. Neither Holdings, which the Plaintiffs have alleged was a 50/50 joint venture between the Debtor Defendant and Plaintiff John Sosalski, nor any of the Holdings Subsidiaries, are debtors before the Court. The Debtor Defendant is the only debtor before this Court. As such, the Estate Property Count asks this Court to exercise jurisdiction over non-estate property.[8]

---

[8] The Motion to Dismiss seeks dismissal of the Complaint it its entirety but does not include any argument as to why the Estate Property Count should be dismissed. Nonetheless, despite the Debtor Defendant failing to raise any jurisdictional argument in his motion to dismiss, this Court has the power to address it *sua sponte*. *See In re Hall*, 30 B.R. 799, 801 (M.D. Tenn. 1983) (collecting cases); *In re Ernst & Young, Inc.*, 129 B.R. 147, 151 (Bankr. S.D. Ohio 1991) (although not raised, the court needed

14

Bankruptcy courts have limited jurisdiction, which is granted by statute. 28 U.S.C. §1334(b) provides that "the district courts shall have original but non-exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11."[9] Congress, however, has not given bankruptcy courts exclusive jurisdiction over all controversies that in some way affect the debtor. *Holywell Corp. v. Smith*, 118 B.R. 876, 879 (S.D. Fla. 1990) (citing *In re Reading Co.*, 59 B.R. 1011 (E.D. Pa. 1986) (interpreting Bankruptcy Act)). In *Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984), the Third Circuit considered the scope of bankruptcy courts' "related to" jurisdiction and held that the proper test was "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 994 (emphasis added). "Thus, the proceeding need not necessarily be against the debtor or against the debtor's property." *Id.* Under *Pacor's* formulation of "related to" jurisdiction, courts have found that absent an alter ego relationship between the debtor and a non-debtor subsidiary, a bankruptcy court lacks "related to" jurisdiction over disputes between the non-debtor subsidiary and a third party that may affect the value of the subsidiary's stock but not the debtor's title to that stock. *See Merhav Ampal Grp., Ltd. v. Merhav (M.N.F.) Ltd. (In re Ampal-American Isr. Corp.)*, 2015 Bankr. LEXIS 2934, at *29 (Bankr. S.D.N.Y. Sept. 2, 2015) (*citing Feldman v. Trustees of Beck Indus., Inc. (In re Beck Indus., Inc.)*, 479 F.2d 410 (2d Cir. 1973) and *Tower Auto Inc. v. Grupo Proeza (In re Tower Auto.)*, 356 B.R. 598 (Bankr. S.D.N.Y. 2006)).

---

to first determine its jurisdictional authority); *but see Rogers v. FDIC*, 2011 U.S. Dist. LEXIS 160991, at *11-*12 n.6 (D. Wyo. Jan. 26, 2011) (where defendant did not raise issue in motion to dismiss, the court did not need to address it).

[9] District courts may delegate "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. §157(a). Pursuant to the Standing Order of Reference of the United States District Court, Eastern District of Pennsylvania, dated November 8, 1990, "any and all cases under chapter 7, 11, 12, and 13 of title 11 and any and all proceedings arising under Title 11 or arising in or related to a chapter 7, 11, 12, or 13 case under Title 11 are and shall be referred to the Bankruptcy Judges for the District."

Although the Estate Property Claim is painted as a dispute between the Plaintiffs and the Debtor Defendant, rather than the Holdings Subsidiaries, it is in essence a claim for a determination of the assets of a non-debtor entity. While the determination of that claim may affect the value of Holdings' interest in the Holdings Subsidiaries, and consequently the value of the Debtor Defendant's interest in Holdings, that is not sufficient to create "related to" jurisdiction of this Court over the Holdings Subsidiaries' assets. *See Holywell Corp. v. Smith*, 118 B.R. 876, 879 (S.D. Fla. 1990) (citing *In re Pentell*, 777 F.2d 1281 (7th Cir. 1985)) (the statute conferring the bankruptcy courts' jurisdiction does not extend that jurisdiction to property belonging to an entity owned in whole or in part by the debtor without first finding that the property also constitutes a part of the debtor's property). In order for a non-debtor subsidiary's assets to be deemed property of the estate, there first needs to be a determination that the separate identities of two or more corporations should be disregarded. *Id.* (applying Florida law). The Plaintiffs have sought no such determination from this Court, and the Court therefore does not have jurisdiction over the Estate Property Count.

## V. CONCLUSION

For the reasons discussed above, this Court will dismiss the Complaint in its entirety without prejudice to the Plaintiffs ability to file an amended Complaint.[10] An Order consistent with this Memorandum Opinion will be entered.

Dated: November 14, 2019

*Magdeline D. Coleman*

MAGDELINE D. COLEMAN
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[10] The Court notes that many of the allegations of the Complaint are simply "cut and paste" from the Plaintiffs' state court complaint against the Debtor Defendant and others. *See* Complaint, Ex. A. The state court complaint did not (and could not) see a non-dischargeability determination, but instead alleged liability under non-bankruptcy law. The Court observes, as Plaintiffs should have, that the claims in the Complaint in this Court differ greatly from the claims in the state court action, and therefore have differing elements to be alleged and proven. As this Memorandum establishes, the wholesale "cut and paste" of the state court complaint will not meet the Plaintiffs' pleading obligations with respect to the relief they seek before this Court.

Jared N. Klein, Esquire
Orphanides & Toner LLP
1500 John F. Kennedy Boulevard, Suite 400
Philadelphia, PA 19102

Dimitri L. Karapelou, Esquire
Law Offices of Dimitri L. Karapelou, LLC
Two Penn Center
1500 John F. Kennedy Boulevard, Suite 920
Philadelphia, PA 19102